*William R. Goldberg,* for respondent.

GAETANO GIORGIO *vs.* F. S. PAYNE CO.

DECEMBER 17, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This action of trespass on the case for negligence was brought to recover for personal injuries resulting from an accident wherein the plaintiff was struck by a descending elevator being operated by the defendant's employees. In the superior court the jury returned a verdict for the plaintiff and thereafter the trial justice denied the defendant's motion for a new trial. The case is before us on defendant's bill of exceptions to that and other rulings during the trial.

The case was tried on the third count of plaintiff's second amended declaration and defendant's plea of the general issue. That count, which alone remained after defendant's demurrer had been sustained as to all other counts, alleged in substance that defendant by its agents was engaged in repairing a certain elevator, the shaft and gates thereof, in the building where plaintiff worked; that in the special circumstances therein set forth plaintiff believed that the elevator was below the fifth floor, requiring it to be operated in accordance with the established custom and practice known to defendant's agents; that they had taken the elevator to the sixth floor without notice to plaintiff; and that in operating it from the sixth to the fifth floor they had negli-

gently failed to give plaintiff a timely signal or warning of its movement, as a result of which negligence plaintiff, while leaning into the shaft and reaching for the cable, was struck and injured as the elevator descended.

The following among other facts appear in evidence. The plaintiff, who was fifty-two years of age, was employed as foreman by the Sun Company, jewelry manufacturers, which occupied the fifth and sixth floors of a building owned by another and located at 239-241 West Exchange street in the city of Providence. The sixth floor, which was infrequently used, was reserved solely for storage, and only the fifth floor was used for actual operations.

For some reason the stairs between the first and the top of the fourth floors were blocked off completely so that the only access to the jewelry shop on the fifth floor was by means of an old freight elevator, the entrance thereto being on the street. A push-button call bell was located on the outside of the building at the first floor and rang a bell in the shop on the fifth floor. According to plaintiff there was no call bell on any other floor to summon the operator of the elevator and no signal in the elevator or well to warn of its approach to any floor. The elevator was operated generally by plaintiff who, as part of his duties, took other employees and business visitors from the first to the fifth floor and *vice versa*. Only occasionally was it operated by his employer, Jacob A. Sohn, who owned the Sun Company.

Most of the time the elevator was kept at the fifth floor, although occasionally it was left at the first floor. While it could be operated to the sixth floor, it was never kept there and plaintiff denied ever having taken it, or having seen it operated by others, to or from that floor. He always used the stairs when it was necessary to get tools or supplies from the sixth floor for use in the shop. Whenever the bell rang, indicating someone at the first floor wanted the elevator, plaintiff as a rule would leave his work, open the metal doors that separated the elevator shaft from the shop at

the fifth floor level, walk into the elevator, and operate it by means of a hand cable to the first floor. If the elevator had been left at the first floor and was needed at the fifth, as happened occasionally, plaintiff had to steady himself by holding the gate with one hand while bending over and reaching into the elevator well some three feet to grasp the cable with his other hand. Unless he did this, he could not reach the cable.

For approximately a week before the accident defendant's employees, a mechanic and his helper, had been performing repair work on and about the elevator without interrupting its service. The plaintiff testified that when they first came he told them of the faults of the elevator and also showed them the way he had to bend and reach into the shaft on the fifth floor to bring up the elevator when it was left below that floor. It appears that on May 21, 1946 defendant's employees took the elevator to the sixth floor where they were fixing the movable gates. Apparently they had not taken it to that floor previously. According to plaintiff, he had no knowledge or notice that they intended to repair or were repairing the elevator on the sixth floor, or that it was ever at that level. On that day, just before noon, plaintiff and defendant's workmen all heard a bell ring indicating the elevator was wanted. The plaintiff responded, opened the metal door separating the shop from the elevator well, and saw that the elevator was not at the fifth floor. From previous experience and the established practice, he believed that it must be at the first floor, where it always had been kept when not at the fifth floor.

According to his custom, he steadied himself by placing one hand on the gate while he bent over and reached into the elevator shaft for the cable. However, while in that position and just before he grasped the cable, the elevator descended without any warning, hit him violently on the head, and threw him back onto the floor of the shop, causing serious head and other injuries. There was no eyewitness

to the actual striking, but in other details plaintiff was substantially corroborated by witnesses who worked in the shop with him.

On the other hand, defendant's workmen testified that they had made various repairs to the gears, cable and gates of the elevator and shaft, and further that on May 15, 1946 they had installed a bell transformer, call bell and buttons at the inside landing on each floor, as shown by defendant's work sheets which were placed in evidence. They admit they undertook no responsibility in operating the elevator for passengers, and customarily turned it over to plaintiff for that purpose. They further testified in substance that while they were working on the gates at the sixth floor they heard a bell signal; that they assumed plaintiff had signaled for the elevator from the fifth floor in accordance with a previous understanding; that they "were worried that he might pull the cable and cause one of us to get hurt"; and that "we told him to wait and we'll be right down when the time was—when it was safe to operate."

According to defendant's workmen the elevator then was just below the sixth floor, and when they had made certain the parts which they were working on would not "fall down," the elevator was started down by one of them, Frederick R. Butterworth, and "as soon as the car moved a few feet it hit this man that had his head through the gate." They denied any knowledge of plaintiff's position of danger until the elevator struck him and threw him back on the floor, whereupon it was stopped immediately before it reached the fifth floor. They did not specifically deny plaintiff's testimony as to their notice of the established practice of keeping the elevator at the fifth floor, and of his demonstration of the method which he had to use to bring it from the first to the fifth floor.

The plaintiff in rebuttal testified that the witness Butterworth, who claimed to be operating the elevator, was not in it at the time but came down the stairs from the sixth floor

after the accident. The plaintiff also reaffirmed his testimony that there was no push button on the fifth floor to signal for the elevator, and he denied that just before the accident he had called to defendant's workmen or that they had called to him as they testified.

The defendant's first three exceptions are respectively to the following rulings: (1) excluding testimony of a certain witness as to whether the fact that repairs on the elevator were being made had been communicated to him as an employee of the Sun Company; (2) denying defendant's motion to strike plaintiff's testimony to the effect that defendant's workmen had not notified him they were working at the sixth floor; and (3) sustaining plaintiff's objection to defendant's attempted cross-examination of one of defendant's workmen who had been called by plaintiff as a witness.

We have examined these exceptions and find no prejudicial error. Testimony under the first ruling, if admissible, would be relevant only to an undisputed fact, since plaintiff himself admitted having notice in general of repairs being made by defendant's agents. The second ruling was a part of the special factual basis relied on by plaintiff and in the circumstances was relevant and proper for consideration with all other evidence. The third ruling was not prejudicial because defendant, if it desired, had the opportunity of presenting such evidence in direct testimony as part of the defense, since the witness was one of defendant's workmen who had been called by plaintiff under the statute for limited testimony. At any rate it is our judgment that if any of these rulings contained error, it was harmless in the light of other facts which directly or indirectly found their way into the evidence without objection. These three exceptions are therefore overruled.

The fourth exception is to the denial of defendant's motion for a directed verdict. It is admitted in defendant's brief that on such motion plaintiff's evidence and the reasonable inferences therefrom must be considered most favor-

ably to plaintiff, and that ordinarily a conflict of testimony is to be resolved by the jury as a question of fact. However, in presenting this argument defendant either ignores these admitted rules or fails to apply them properly. It contends substantially that the only credible evidence was presented by defendant's witnesses, and that there was no duty on its workmen to warn plaintiff since they were unaware that he had placed himself in a position of danger.

In our judgment this argument in effect depends upon a weighing of the evidence and a passing on the credibility of the witnesses. It also states a well-settled principle for the ordinary case, but in applying it defendant fails to consider that there was evidence here of special circumstances tending to show an established practice, in which defendant's workmen with notice had participated, from all of which special facts plantiff alleges that a duty was undertaken by or devolved upon defendant's employees to give a timely signal or warning before moving the elevator. Our examination of the transcript discloses that there was a conflict in the evidence upon several material facts pertinent to questions as to defendant's liability and to plaintiff's contributory negligence. For the purposes of passing upon defendant's motion for a directed verdict the trial justice applied the correct rule in viewing the evidence most favorably to plaintiff and on this record properly denied defendant's motion. *Silvia* v. *Caizzi*, 63 R. I. 172. The fourth exception is therefore overruled.

The defendant further contends under its fifth exception that the trial justice misconceived the evidence in denying its motion for a new trial. However, it fails to point out precisely the evidence which he allegedly misconceived. In general defendant repeats the same contentions as to credible evidence and lack of duty on defendant as it presented on its motion for a directed verdict.

In our judgment there was evidence that circumstances relating to the necessity, method and custom of plaintiff's

operating the elevator in a special way were known to and acquiesced in by defendant's agents; that such method had become established as the usual and accepted practice between them; and that this procedure required plaintiff regularly to assume a position of danger in bringing the elevator to the fifth floor, which fact was known to defendant's agents. Therefore, if the jury believed plaintiff's evidence the case would cease to be the ordinary one and defendant's contention that it had no duty to anticipate such danger would not apply. The fact that defendant's agents heard the bell signal and from previous experience knew plaintiff was likely to lean into the shaft is demonstrated by their admission to the effect that they feared plaintiff would reach into the well for the cable and start the elevator moving before they themselves had gotten to a place of safety.

In the circumstances there was credible evidence for the jury to consider on the issues of defendant's negligence and plaintiff's contributory negligence. Different minds might reasonably reach different conclusions in weighing such evidence. Here the trial justice independently passed judgment on the evidence in accordance with his duty. *Nichols* v. *New England Tel. & Tel. Co.*, 57 R. I. 180. He has expressly approved the verdict as to liability and the damages are not questioned. The defendant has not shown wherein the trial justice in performing his duty in accordance with the established rule has overlooked or misconceived any material evidence. Since we cannot say that his decision upon such conflicting evidence is clearly wrong, the defendant's fifth exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*John DiLibero, Carroll & Dwyer, John G. Carroll,* for plaintiff.

*Swan, Keeney & Smith, Frederick W. O'Connell, John B. Dillon,* for defendant.